UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
            :
UNITED STATES OF AMERICA   :  <u>SUPERSEDING</u>
            :  <u>INDICTMENT</u>
   -v-       :
            :  S1 11 Cr. 1072 (DLC)
JUAN CARLOS VIERA,     :
 a/k/a "Gordo,"     :
 a/k/a "Jon Jon,"    :
JOSE MANUEL DOMINGUEZ,   :
 a/k/a "Flaco,"     :
JULIO DOMINGUEZ,     :
CARLOS ALBERTO PADRON,   :
 a/k/a "Lindo,"     :
 a/k/a "Carlos Alberto Padron Pena," :
JUAN MANUEL TAVAREZ PADILLA, :
JUAN TAVAREZ,      :
 a/k/a "Patron,"     :
 a/k/a "Jefe,"      :
 a/k/a "Nene,"      :
AURA CATALINA TAVAREZ,   :
 a/k/a "La Patrona,"    :
 a/k/a "Jefa,"      :
EDWIN M. TAVAREZ,     :
 a/k/a "Junior,"     :
 a/k/a "Chepe,"     :
ISRAEL TACHER,      :
 a/k/a "Capi,"      :
 a/k/a "El Judio,"     :
ROBERTO TACHER,     :
 a/k/a "Robertico,"    :
VANESSA ROSARIO,     :
ELIGIO ARMAS,      :
EDUARDO DIAZ,      :
CARLOS PERALTA,     :
 a/k/a "Platano,"     :
 a/k/a "Chino,"     :
JOSELITO PERALTA,     :
 a/k/a "Piki,"      :
JUAN CARLOS PERALTA,    :
HANSER OLIVO LIRANZO,    :
KELVIN MANUEL MARTINEZ TAVERAS, :
GLENN LUIS CABRERA,     :
 a/k/a "Luigi,"      :
FARY R. CABA PADILLA,    :



```
MIGUEL PADILLA,                        :
AMERICO LUIS GARCIA DOMINGUEZ,         :
WILFRED RODRIGUEZ,                     :
    a/k/a "Wilson,"                    :
JOSE RAMON GONZALEZ,                   :
    a/k/a "Chamon,"                    :
ALEX JUSTO,                            :
YOEL FERNANDEZ RIVERO,                 :
    a/k/a "Mango,"                     :
AMAURIS A. ROSARIO,                    :
    a/k/a "Maro,"                      :
    a/k/a "Mauro,"                     :
JACQUELINE JIMENEZ,                    :
    a/k/a "Morena,"                    :
LUIS SANTANA,                          :
BAYOHAN DIAZ,                          :
    a/k/a "Bayo,"                      :
PAULINO CAYETANO,                      :
    a/k/a "Cayetano,"                  :
ARMANDO GARCIA,                        :
SERGIO NOVO,                           :
LAZARO OSPINA,                         :
BRENDA SANTOS,                         :
IRA KARP,                              :
LUIS ABREU,                            :
JOEL GABRIEL CASADO,                   :
    a/k/a "Joel Casado Castillo,"      :
JOSE FELIPE,                           :
    a/k/a "Gino,"                      :
BENITO DURAN,                          :
    a/k/a "Beano,"                     :
ARELIS LEE, and                        :
MILAGROS ACEVEDO,                      :
                                       :
                          Defendants.  :
                                       :
- - - - - - - - - - - - - - - - - - X
```

COUNT ONE

(Conspiracy to Commit Wire Fraud, Mail Fraud
and Healthcare Fraud)

The Grand Jury charges:

THE SCHEME TO DEFRAUD

1.    This scheme involves the unlawful diversion and trafficking of hundreds of millions of dollars' worth of prescription drugs that previously had been dispensed to Medicaid recipients in the New York City area ("second-hand" drugs) in a national, underground market.  The prescription drugs involved in this scheme are not drugs of abuse, but rather are drugs designed to treat various illnesses, including, for example, HIV, schizophrenia, and asthma.  These second-hand drugs are originally dispensed to Medicaid recipients in the New York City area who then sell the second-hand drugs into collection and distribution channels that ultimately end at pharmacies for resale to unsuspecting consumers.  Through the methods described herein, the defendants and their co-conspirators profit by exploiting the difference between the cost to the patient of obtaining bottles of prescription drugs through Medicaid – which typically is zero – and the hundreds of dollars per bottle that pharmacies pay to purchase those drugs to distribute to their customers.  To reap maximum profits, the defendants and their co-conspirators target the most expensive

3

drugs, including, but not limited to, the following drugs (with the corresponding approximate Medicaid reimbursement values per bottle): Atripla ($1,635/bottle); Trizivir ($1,347/bottle); Zyprexa ($1,015/bottle); Truvada ($1,080/bottle); Prezista ($968/bottle); Reyataz ($947/bottle); Isentress ($940/bottle); Intelence ($770/bottle); Kaletra ($704/bottle); and Sustiva ($555/bottle).

2.    To effectuate the fraudulent scheme, the lowest level participants in the scheme (the "Medicaid Beneficiaries") fill prescriptions for month-long supplies of drugs at pharmacies throughout the New York City area, using Medicaid benefits to pay the cost. The Medicaid Beneficiaries are typically AIDS patients or individuals who suffer from other illnesses and who sell their medications for cash rather than use them for treatment. Medicaid Beneficiaries sell their bottles of drugs to other participants in the scheme ("Collectors") at locations like street corners and bodegas in and around New York City, including in the Washington Heights neighborhood of Manhattan and in the Bronx. Collectors sell the second-hand bottles they collect to other participants in the scheme ("Aggregators"), who typically buy large quantities of second-hand drugs from multiple Collectors. Aggregators sell the second-hand drugs to other Aggregators higher up the chain, who typically buy large amounts from multiple Aggregators. Eventually, the second-hand

drugs make their way to the highest-level Aggregators involved in the scheme, who sell the second-hand drugs into distribution channels ultimately leading to pharmacies to be dispensed to unsuspecting consumers.

3.  These distribution channels involve individuals in Texas, Florida, Nevada, Utah, Alabama, and elsewhere, who control wholesale prescription drug distribution companies ("Corrupt Distribution Companies"), which sell the second-hand drugs to pharmacies and other wholesale prescription drug distribution companies in New York, New Jersey, Massachusetts, Pennsylvania, Illinois, South Carolina, Mississippi, Arizona, Kentucky, Minnesota, Washington, Hawaii, Puerto Rico, and elsewhere.  The Corrupt Distribution Companies are designed to conceal the fact that the drugs being sold to the pharmacies are second-hand drugs.

4.  Pharmacies originally dispense the drugs to Medicaid Beneficiaries in original, sealed, manufacturers' bottles.  Each bottle comes from the manufacturer bearing a label (the "manufacturer's label") that indicates, among other things, the identity of the manufacturer; the brand of drug; the strength of drug; the required storage conditions (such as temperature); the lot number tracking the actual tablets, pills or capsules contained in the bottle back to the place, date and time of their manufacture; and the expiration date of the drugs.  Prior

to dispensing each bottle, pharmacies affix to the bottle, on top of the manufacturer's label, a separate, adhesive label ("patient label") that includes additional information, such as the name and address of the pharmacy, the name of the patient, information indicating that the drug was obtained through Medicaid, and dosage instructions. After purchasing the second-hand bottles originally dispensed to Medicaid Beneficiaries, Collectors and Aggregators use lighter fluid and other potentially hazardous chemicals to dissolve the adhesive on the patient labels, and remove the patient labels and all traces of the adhesive from the bottles. Through this process, the Collectors and Aggregators make the bottles appear new for the purpose of concealing the fact that they have already been dispensed, so that they eventually can be re-sold to unsuspecting consumers.

        5. Because the prescription drugs involved in the scheme are not drugs of abuse, the bottles' high value depends on their appearing to contain new, unexpired drugs that legitimately have been obtained directly from manufacturers through authorized and licensed wholesale distributors. However, during the process of removing patient labels, the manufacturers' labels sometimes become damaged such that the bottles no longer appear as if they are new. In other instances, the second-hand drugs already have expired or are close to their expiration dates. When the

bottles are not re-saleable because of damaged manufacturers' labels or expiration date problems, certain Aggregators replace the original manufacturers' labels with counterfeit labels and/or alter the labels to backdate their expiration dates. In other instances, Medicaid Beneficiaries, Collectors, and Aggregators remove the drugs from the bottles and traffic in loose pills. Loose pills are untraceable to particular manufacturers' lot numbers, and their original expiration dates cannot be determined. Aggregators typically store their inventories of loose pills in plastic bags until they can re-sell them into distribution channels that lead to unscrupulous pharmacists who buy them at prices below wholesale or Medicaid value to dispense to their customers for additional profit.

6.    The scheme itself is potentially dangerous to the unwitting consumers of second-hand prescription drugs. As described above, the bottles have been treated with potentially hazardous chemicals, and the drugs themselves may have expired. Additionally, the participants in the scheme store the drugs in uncontrolled conditions, such as car trunks, residences and rented storage facilities, which may not be sufficient to maintain the medical efficacy of such drugs over time. For example, some HIV medications require constant storage in conditions between 25 and 30 degrees Celsius to maintain their efficacy. Moreover, in some instances, by the time Aggregators

obtain the bottles of second-hand drugs, some of the bottles contain drugs or doses different from what is indicated on the manufacturers' labels.

      7.    This scheme also involves material misrepresentations and omissions both on the front end, when Medicaid Beneficiaries initially obtain prescription drugs, and on the back end, when the second-hand drugs are dispensed to unwitting consumers filling their prescriptions.  On the front end of the scheme, the defendants rely on the fact that the Medicaid Beneficiaries fill their prescriptions for little or no cost for the purpose of selling drugs into the underground market rather than ingesting them to treat their illnesses.  Each Medicaid Beneficiary's Medicaid card contains a disclaimer that "fraudulent use of this card is a punishable offense."  The Medicaid program, which would not have paid such benefits on behalf of the Medicaid Beneficiaries if the Medicaid Beneficiaries had disclosed that they were selling the drugs to others, unwittingly funds the scheme.  On the back end of the scheme, the defendants' purposeful obfuscation of the true source of the second-hand drugs defrauds legitimate consumers who unknowingly have their prescriptions filled with second-hand drugs that have been sold back to pharmacies as part of the scheme.  Legitimate consumers would not knowingly fill their prescriptions with second-hand drugs, and legitimate consumers'

insurance companies and other health care benefit programs would not knowingly reimburse pharmacies the cost of second-hand drugs. In this manner, the scheme was designed for Medicaid to be defrauded multiple times, as the same drugs that came from Medicaid Beneficiaries in the first place could be dispensed to Medicaid patients on the back end.

8. Moreover, the scheme uses Corrupt Distribution Companies to conceal the true source of the second-hand drugs. Federal regulations require that "[b]efore the completion of any wholesale distribution by a wholesale distributor of a prescription drug . . . to another wholesale distributor or retail pharmacy, the seller shall provide to the purchaser a statement identifying each prior sale, purchase, or trade of such drug. This identifying statement shall include . . . the business name and address of all parties to each prior transaction involving the drug, starting with the manufacturer; and . . . the date of each previous transaction." 21 C.F.R. § 203.50(a). Accordingly, a necessary component of the fraudulent scheme is creating false records purporting to trace the second-hand drugs back to the manufacturer through the Corrupt Distribution Companies as if those drugs had not been dispensed previously to Medicaid Beneficiaries and purchased on the street in the New York City area.

9.    To facilitate the scheme, the defendants use commercial interstate carriers to ship the drugs in boxes from the New York City area to other areas of the country, including Florida and Texas.  Various defendants and their co-conspirators place and receive interstate telephone calls to arrange for delivery and receipt of second-hand drugs and cash.  Various defendants and their co-conspirators also engage in international telephone calls, send and receive e-mails, wire cash from state to state and from the United States to other countries, and cause other wire transmissions to be made in furtherance of the scheme.  In addition, the processes used to reimburse pharmacies for the cost of the prescription drugs and otherwise to administer Medicaid and other health benefit programs involve various wire transmissions.

THE DEFENDANTS AND RELEVANT ENTITIES AND INDIVIDUALS

10.    The defendants charged herein played a variety of roles in the scheme.  Some defendants purchased second-hand prescription drugs from high-level Aggregators to sell into distribution channels leading back to unsuspecting consumers, some were high- and mid-level Aggregators who bought and sold large quantities of prescription drugs to and from each other and from Collectors, and some defendants were Collectors.

11.    At various times relevant to the charges in this Indictment, the "SANTANA Organization" was a group of

10

individuals based in New York City and led by LUIS SANTANA, the defendant, who acted as mid-level Aggregators of second-hand drugs in the New York City area, and who sold large quantities of second-hand drugs to the PADILLA Organization, as defined below, and others.

12.  At various times relevant to the charges in this Indictment, the "PERALTA Organization" was a group of individuals based in New Jersey and led by CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," and his brother, JOSELITO PERALTA, a/k/a "Piki," the defendants, who acted as mid-level Aggregators of second-hand drugs in the New York City area, and who sold large quantities of second-hand drugs to the PADILLA Organization and the TACHER Organization, as defined below, and others.

13.  At various times relevant to the charges in this Indictment, the "PADILLA Organization" was a group of individuals based in New York and New Jersey and led by JUAN MANUEL TAVAREZ PADILLA, the defendant, who acted as high-level Aggregators of second-hand drugs in the New York City area, and who sold large quantities of second-hand drugs to the DOMINGUEZ/VIERA Organization and the PADRON Organization, as defined below, and others.

14.  At various times relevant to the charges in this Indictment, the "TACHER Organization" was a group of individuals

based in Florida and led by ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," the defendant, who obtained second-hand drugs from the PERALTA Organization and sold them into distribution channels, including to the CC-1 Organization, as defined below.

15.   At various times relevant to the charges in this Indictment, the "DOMINGUEZ/VIERA Organization" was a group of individuals based in Florida and led by JULIO DOMINGUEZ, JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," and JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," the defendant, who obtained second-hand drugs from sources of supply in the New York City area and sold them into distribution channels.

16.   At various times relevant to the charges in this Indictment, the "PADRON Organization" was a group of individuals based in Florida and led by CARLOS ALBERTO PADRON a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," the defendant, and others, who obtained second-hand drugs from sources of supply in the New York City area and sold them into distribution channels.

17.   At various times relevant to the charges in this Indictment, a co-conspirator not named as a defendant herein ("CC-1") controlled and operated an organization of individuals and Corrupt Distribution Companies in Texas, Nevada, Utah, Alabama, and elsewhere (the "CC-1 Organization").  The CC-1 Organization purchased second-hand drugs from the TACHER Organization and others and sold them to pharmacies and other

12

wholesale prescription distribution drug companies in New York,
New Jersey, Massachusetts, Pennsylvania, Illinois, South
Carolina, Mississippi, Arizona, Kentucky, Minnesota, Washington,
Hawaii, Puerto Rico, and elsewhere.

18.  At various times relevant to the charges in this
Indictment, JULIO DOMINGUEZ, JOSE MANUEL DOMINGUEZ, a/k/a
"Flaco," and JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon,"
the defendants, were leaders of the DOMINGUEZ/VIERA Organization
and coordinated the purchase of second-hand drugs from the
PADILLA Organization and others and the sale of those drugs into
distribution channels.

19.  At various times relevant to the charges in this
Indictment, CARLOS ALBERTO PADRON a/k/a "Lindo," a/k/a "Carlos
Alberto Padron Pena," the defendant, was a leader of the PADRON
Organization and coordinated the purchase of second-hand drugs
from the PADILLA Organization and others and the sale of those
drugs into distribution channels.

20.  At various times relevant to the charges in this
Indictment, ELIGIO ARMAS and EDUARDO DIAZ, the defendants,
worked for the DOMINGUEZ/VIERA Organization.  ARMAS coordinated
the shipment of second-hand drugs, which the DOMINGUEZ/VIERA
Organization purchased from Aggregators, through commercial
interstate carriers from the New York City area to other states.
DIAZ assisted in buying second-hand drugs from the PADILLA

13

Organization for the DOMINGUEZ/VIERA Organization and making payments to the PADILLA Organization.

21. At various times relevant to the charges in this Indictment, AMERICO LUIS GARCIA DOMINGUEZ, the defendant, worked for the DOMINGUEZ/VIERA Organization. AMERICO LUIS GARCIA DOMINGUEZ assisted in obtaining second-hand drugs from and making payments to the PADILLA Organization.

22. At various times relevant to the charges in this Indictment, JUAN MANUEL TAVAREZ PADILLA, the defendant, was the leader of the PADILLA Organization. PADILLA supervised other members of the PADILLA Organization, sold drugs to the DOMINGUEZ/VIERA and PADRON Organizations, picked up large amounts of cash from the DOMINGUEZ/VIERA Organization, and used emails to communicate with the PADILLA Organization's customers and to keep track of the PADILLA Organization's operations, inventory, and profits.

23. At various times relevant to the charges in this Indictment, HANSER OLIVO LIRANZO, the defendant, worked for the PADILLA Organization. LIRANZO reported directly to JUAN MANUEL TAVAREZ PADILLA, the defendant, and functioned as PADILLA's lieutenant. LIRANZO also supervised other members of the PADILLA Organization. LIRANZO coordinated the receipt of second-hand drugs from the PADILLA Organization's suppliers, the payments to those suppliers, the transfer of second-hand drugs

to the DOMIGUEZ/VIERA and PADRON Organizations, and the receipt

of payment from the DOMIGUEZ/VIERA and PADRON Organizations.

24.  At various times relevant to the charges in this

Indictment, KELVIN MANUEL MARTINEZ TAVERAS, the defendant,

worked for the PADILLA Organization.  TAVERAS reported to HANSER

OLIVO LIRANZO, the defendant, and assisted him in connection

with the scheme described above.

25.  At various times relevant to the charges in this

Indictment, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a

"Nene," his wife, AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

MIGUEL PADILLA, FARY R. CABA PADILLA, JOSE RAMON GONZALEZ, a/k/a

"Chamon," and JACQUELINE JIMENEZ, a/k/a "Morena," the

defendants, were Aggregators who supplied second-hand drugs to

the PADILLA Organization.

26.  At various times relevant to the charges in this

Indictment, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," and

his brother JOSELITO PERALTA, a/k/a "Piki," the defendants, were

the leaders of the PERALTA Organization.  CARLOS PERALTA and

JOSELITO PERALTA managed other participants in the scheme and

sold large amounts of second-hand drugs to the PADILLA

Organization, the TACHER Organization, and others.

27.  At various times relevant to the charges in this

Indictment, JUAN CARLOS PERALTA and GLENN LUIS CABRERA, a/k/a

"Luigi," the defendants, purchased and processed second-hand drugs for the PERALTA Organization and sold those second-hand drugs to the PADILLA Organization and others.

28.  At various times relevant to the charges in this Indictment, WILFRED RODRIGUEZ, a/k/a "Wilson," the defendant, was an Aggregator who supplied second-hand drugs to the PERALTA Organization.

29.  At various times relevant to the charges in this Indictment, ALEX JUSTO and AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," the defendants, were Aggregators who supplied second-hand drugs to the PERALTA Organization and the PADILLA Organization.

30.  At various times relevant to the charges in this Indictment, LUIS SANTANA, the defendant, was the leader of the SANTANA Organization.  SANTANA was based in New York City and managed and supervised the members of the SANTANA Organization in the purchase of second-hand drugs and their sale to the PADILLA Organization and others.

31.  At various times relevant to the charges in this Indictment, BAYOHAN DIAZ, a/k/a "Bayo," the defendant, worked for the SANTANA Organization.  DIAZ was SANTANA's lieutenant and ran the SANTANA Organization and reported to SANTANA while SANTANA was traveling to the Dominican Republic.

32.  At various times relevant to the charges in this Indictment, PAULINO CAYETANO, a/k/a "Cayetano," the defendant, supplied second-hand drugs to the SANTANA Organization.

33.  At various times relevant to the charges in this Indictment, YOEL FERNANDEZ RIVERO, a/k/a "Mango," purchased second-hand drugs from the PADILLA Organization to put them into distribution channels.

34.  At various times relevant to the charges in this Indictment, ARMANDO GARCIA, the defendant, purchased second-hand drugs from a co-conspirator not named as a defendant herein ("CC-2") to put them into distribution channels.

35.  At various times relevant to the charges in this Indictment, SERGIO NOVO and LAZARO OSPINA, the defendants, worked together to purchase second-hand drugs from the PERALTA Organization to put them into distribution channels.

36.  At various times relevant to the charges in this Indictment, ISRAEL TACHER a/k/a "Capi," a/k/a "El Judio," and his son, ROBERTO TACHER, a/k/a "Robertico," the defendants, purchased second-hand drugs on behalf of the TACHER Organization from the PERALTA Organization and shipped them from New Jersey to Texas to CC-1 and the CC-1 Organization, who distributed the second-hand drugs.

STATUTORY ALLEGATIONS

37. From at least in or about 2005, up to and including in or about July 2012, in the Southern District of New York and elsewhere, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together

and with each other to violate Sections 1341, 1343, and 1347 of
Title 18, United States Code.

Objects of the Conspiracy

Mail Fraud

38.   It was a part and an object of the conspiracy that
JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL
DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,
and others known and unknown, willfully and knowingly, having

19

devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

### Wire Fraud

39.  It was further a part and an object of the conspiracy that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango,"  AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,
and others known and unknown, willfully and knowingly, having
devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, would
and did transmit and cause to be transmitted by means of wire
and radio communication in interstate and foreign commerce,
writings, signs, signals, pictures, and sounds for the purpose
of executing such scheme and artifice, in violation of Title 18,
United States Code, Section 1343.

<u>Health Care Fraud</u>

40.  It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO

PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN

MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a

"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,

CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO

LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO

LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE

RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ

RIVERO, a/k/a "Mango,"  AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,

BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"

ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,

and others known and unknown, willfully and knowingly would and

did execute and attempt to execute a scheme and artifice to

defraud a health care benefit program, and to obtain, by means

of false and fraudulent pretenses, representations, and promises

money owned by and under the custody and control of a health

care benefit program in connection with the delivery of and

22

payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

(Conspiracy to Commit Adulteration and Misbranding Offenses and the Unlawful Wholesale Distribution of Prescription Drugs)

The Grand Jury further charges:

41. The allegations contained in paragraphs 1 through 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

42. From at least in or about 2005, up to and including in or about July 2012, in the Southern District of New York and elsewhere, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL

PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 331(a), 331(b), 331(c), 331(t), 333(a)(2), 333(b)(1)(D), and 353(e)(2)(A) and (B) of Title 21, United States Code.

43.  It was a part and an object of the conspiracy that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

24

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,
and others known and unknown, willfully and knowingly, and with
the intent to defraud and mislead, would and did introduce and
deliver for introduction into interstate commerce a drug that
was adulterated, as that term is defined in Title 21, United
States Code, Section 351(a), in violation of Title 21, United
States Code, Sections 331(a) and 333(a)(2).

44.    It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO

LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO

LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE

RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ

RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,

BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"

ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,

and others known and unknown, willfully and knowingly, and with

the intent to defraud and mislead, would and did introduce and

deliver for introduction into interstate commerce a drug that

was misbranded, as that term is defined in Title 21, United

States Code, Sections 352(a) and (i), in violation of Title 21,

United States Code, Sections 331(a) and 333(a)(2).

45.  It was a part and an object of the conspiracy that

JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL

DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO

PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN

MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a

"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,

CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants, and others known and unknown, willfully and knowingly, and with the intent to defraud and mislead, would and did adulterate as that term is defined in Title 21, United States Code, Section 351(a), a drug in interstate commerce, in violation of Title 21, United States Code, Sections 331(b) and 333(a)(2).

46.  It was further a part and an object of the conspiracy that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants, and others known and unknown, willfully and knowingly, and with the intent to defraud and mislead, would and did misbrand, as that term is defined in Title 21, United States Code, Sections 352(a) and (i), a drug in interstate commerce, in violation of Title 21, United States Code, Sections 331(b) and 333(a)(2).

47.  It was further a part and an object of the conspiracy that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,
and others known and unknown, willfully and knowingly, and with
the intent to defraud and mislead, would and did receive in
interstate commerce a drug that was adulterated, as that term is
defined in Title 21, United States Code, Section 351(a), and
would and did deliver and proffer delivery thereof for pay and
otherwise, in violation of Title 21, United States Code,
Sections 331(c) and 333(a)(2).

48.  It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,
and others known and unknown, willfully and knowingly, and with
the intent to defraud and mislead, would and did receive in
interstate commerce a drug that was misbranded, as that term is
defined in Title 21, United States Code, Sections 352(a) and
(i), and would and did deliver and proffer delivery thereof for
pay and otherwise, in violation of Title 21, United States Code,
Sections 331(c) and 333(a)(2).

    49.  It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,
and others known and unknown, willfully and knowingly, and with
the intent to defraud and mislead, would and did alter,
mutilate, destroy, obliterate and remove the whole and any part
of the labeling of a drug, and would and did do other acts with
respect to a drug while such drug was held for sale, after
shipment in interstate commerce and which resulted in such drug
being adulterated, as that term is defined in Title 21, United
States Code, Section 351(a), in violation of Title 21, United
States Code, Sections 331(k) and 333(a)(2).

50.   It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE

MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO

PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN

MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a

"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,

CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO

LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO

LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE

RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ

RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,

BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"

ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,

and others known and unknown, willfully and knowingly, and with

the intent to defraud and mislead, would and did alter,

mutilate, destroy, obliterate and remove the whole and any part

of the labeling of a drug, and would and did do other acts with

respect to a drug while such drug was held for sale, after

shipment in interstate commerce and which resulted in such drug

being misbranded, as that term is defined in Title 21, United

States Code, Sections 352(a) and (i), in violation of Title 21,
United States Code, Sections 331(k) and 333(a)(2).

51.  It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants,
and others known and unknown, willfully and knowingly would and
did engage in the wholesale distribution in interstate commerce
of prescription drugs subject to Title 21, United States Code,

Section 353(b) in a State, at a time when the defendants and their coconspirators were not licensed by that State, in accordance with the guidelines issued under Title 21, United States Code, Section 353(e)(2)(B), in violation of Title 21, United States Code, Sections 331(t), 333(b)(1)(D), and 353(e)(2)(A) and (B).

## Overt Acts

52. In furtherance of the conspiracy and to effect the illegal objects thereof, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a

34

"Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about January 24, 2012, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," the defendant, and a co-conspirator not named as a defendant herein ("CC-3") engaged in a telephone conversation.  During the conversation, in substance and part, VIERA provided a list of second-hand prescription drugs he wanted to purchase, including the HIV medications Combivir, Epivir, Norvir, Reyataz, and Kaletra.  VIERA and CC-3 also discussed the quality and cleanliness of the bottles.

b.    On or about December 11, 2011, JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," and JUAN MANUEL TAVAREZ PADILLA, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, PADILLA listed various prescription drugs and quantities, including the HIV medications Atripla, Combivir, Epzicom, Epivir, Kaletra and Norvir, and acid reflux medication Nexium.  DOMINGUEZ told PADILLA, in substance, that he would call PADILLA when they were ready to pick up the drugs.

c.    On or about August 1, 2011, JULIO DOMINGUEZ, the defendant, and CC-2 engaged in a telephone conversation.  During

the conversation, in substance and part, CC-2 told DOMINGUEZ
that CC-2 had prescription drugs available.  DOMINGUEZ told CC-2
that the expiration dates for the drugs must be at least 14 or
15 months from then.

      d.   On or about October 19, 2011, in New Jersey, JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," and AMERICO LUIS GARCIA
DOMINGUEZ, the defendants, met with HANSER OLIVO LIRANZO, the
defendant, about prescription drug trafficking.

      e.   On or about November 12, 2011, in Miami, Florida,
CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto
Padron Pena," the defendant, met with HANSER OLIVO LIRANZO and
EDWIN M. TAVAREZ, the defendants, about prescription drug
trafficking.

      f.   On or about December 12, 2011, in New Jersey,
EDUARDO DIAZ, the defendant, met with JUAN MANUEL TAVAREZ
PADILLA, the defendant, and gave him approximately $149,000 in
cash as payment for second-hand prescription drugs.

      g.   On or about December 16, 2011, in New Jersey,
EDUARDO DIAZ, the defendant, met with JUAN MANUEL TAVAREZ
PADILLA and gave him approximately $30,000 in cash as payment
for second-hand prescription drugs.

      h.   From at least in or about 2008, up to and
including in or about February 2010, ELIGIO ARMAS, the
defendant, obtained second-hand prescription drugs from a co-

conspirator not named as a defendant herein ("CC-4"), which
ARMAS caused to be shipped to the DOMINGUEZ/VIERA Organization
in Florida.

     i.   On or about December 20, 2011, JUAN TAVAREZ,
a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," and JUAN MANUEL
TAVAREZ PADILLA, the defendants, engaged in a telephone
conversation. During the conversation, in substance and part,
JUAN TAVAREZ stated that he wanted to obtain various HIV
medications. PADILLA told JUAN TAVAREZ to call FARY R. CABA
PADILLA, the defendant, and that JUAN MANUEL TAVAREZ PADILLA
would leave TAVAREZ money so he could buy the prescription drugs
and give them to HANSER OLIVO LIRANZO, the defendant.

     j.   On or about October 31, 2011, AURA CATALINA
TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," and HANSER OLIVO
LIRANZO, the defendants, engaged in a telephone conversation
while TAVAREZ was in the Bronx, New York. During the
conversation, in substance and part, LIRANZO stated that TAVAREZ
had handed in defective bottles of various HIV medications.
TAVAREZ indicated to LIRANZO that she was owed approximately
$25,000 from the prescription drugs she had previously supplied.

     k.   On or about September 22, 2011, MIGUEL PADILLA
and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone
conversation. During the conversation, in substance and part,
PADILLA asked LIRANZO whether LIRANZO was purchasing certain

types of prescription drugs.  LIRANZO indicated he would
purchase prescription drugs, which PADILLA agreed to sell to
LIRANZO.

        l.    On or about December 17, 2011, FARY R. CABA
PADILLA and JUAN MANUEL TAVAREZ PADILLA, the defendants, engaged
in a telephone conversation.  During the conversation, in
substance and part, they discussed HIV medications that FARY R.
CABA PADILLA would provide to JUAN MANUEL TAVAREZ PADILLA.

        m.    On or about December 1, 2011, CARLOS PERALTA,
a/k/a "Platano," a/k/a "Chino," the defendant, met with ISRAEL
TACHER, a/k/a "Capi," a/k/a "El Judio," and ROBERTO TACHER,
a/k/a "Robertico," the defendants, at a motel in New Jersey,
where PERALTA provided them with boxes, a suitcase, and packing
material.

        n.    On or about December 1, 2011, ISRAEL TACHER and
ROBERTO TACHER, the defendants, delivered four boxes containing
a total of 301 bottles of HIV medication Kaletra, worth more
than approximately $212,000 in Medicaid reimbursement value, to
a commercial interstate carrier for shipment from New Jersey to
an address in Texas, ultimately destined for CC-1 and the CC-1
Organization.

        o.    On or about November 29, 2011, JOSELITO PERALTA,
a/k/a "Piki," and CARLOS PERALTA, the defendants, engaged in a
telephone conversation while JOSELITO PERALTA was in New York,

New York.  During the conversation, in substance and part, CARLOS PERALTA and JOSELITO PERALTA discussed a deal for more than 200 bottles of second-hand prescription drugs for $90 per bottle.  JOSELITO PERALTA stated, in substance, that the bottles were clean and stored in a drawer and that he would put them in a box for CARLOS PERALTA.

       p.  On or about May 18, 2011, JUAN CARLOS PERALTA, the defendant, removed patient labels from bottles of second-hand prescription drugs inside the residence of JOSELITO PERALTA in Ridgefield Park, New Jersey.

       q.  On or about July 23, 2011, GLENN LUIS CABRERA and JOSELITO PERALTA, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, PERALTA asked CABRERA to check on the computer to identify a pill bearing the stamp "Lilly 4420."  CABRERA replied that it was the same as Zyprexa, a schizophrenia medication.

       r.  On or about September 15, 2011, KELVIN MANUEL MARTINEZ TAVERAS and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation while LIRANZO was in New York, New York.  During the conversation, in substance and part, LIRANZO instructed TAVERAS how to use a computer to scan a list of prescription drugs to send to JUAN MANUEL TAVAREZ PADILLA, the defendant, via an email address.

s.   On or about September 29, 2011, WILFRED RODRIGUEZ, a/k/a "Wilson," and JOSELITO PERALTA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, RODRIGUEZ and PERALTA discussed prescription drugs Kaletra and Zyprexa and discussed cleaning bottles of second-hand prescription drugs.

t.   On or about September 18, 2011, JOSE RAMON GONZALEZ, a/k/a "Chamon," and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, GONZALEZ asked LIRANZO whether LIRANZO would bring GONZALEZ some money. LIRANZO said he could not and that he had over $3,000 worth of HIV medications that were not re-salable because the labels were scratched. GONZALEZ asked LIRANZO to call JUAN MANUEL TAVAREZ PADILLA, the defendant, about the money and stated that GONZALEZ was owed $6,000 because LIRANZO previously only gave him $30,000.

u.   On or about September 3, 2011, ALEX JUSTO and JOSELITO PERALTA, the defendants, engaged in a telephone conversation. During the call, in substance and part, PERALTA told JUSTO that there was a bottle of an HIV medication that had the corner of the label peeled off and that PERALTA wanted JUSTO to know about it in case it was returned to him.

40

v.    On or about September 19, 2011, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," and HANSER OLIVO LIRANZO, the defendants,
engaged in a telephone conversation. During the conversation,
in substance and part, RIVERO stated that he would call the next
day and would gather cash.

w.    On or about September 6, 2011, AMAURIS A.
ROSARIO, a/k/a "Maro," a/k/a "Mauro," and JOSELITO PERALTA, the
defendants, engaged in a telephone conversation. During the
conversation, in substance and part, ROSARIO asked whether
PERALTA had defective bottles of various HIV medications.
ROSARIO complained that PERALTA paid him less per bottle than
PERALTA had paid others, and that JUAN MANUEL TAVAREZ PADILLA,
the defendant, gave ROSARIO a portion of the profit for drugs
ROSARIO provided to PADILLA. PERALTA stated that he also sold
prescription drugs to PADILLA.

x.    On or about October 22, 2011, JACQUELINE JIMENEZ,
a/k/a "Morena," and HANSER OLIVO LIRANZO, the defendants,
engaged in a telephone conversation. During the conversation,
in substance and part, they discussed the price and supply of
various HIV medications, and LIRANZO instructed JIMENEZ to check
and make sure that the bottles were clean.

y.    On or about September 15, 2011, LUIS SANTANA and
HANSER OLIVO LIRANZO, the defendants, engaged in a telephone
conversation while LIRANZO was in the Bronx, New York. During

41

the conversation, in substance and part, SANTANA and LIRANZO agreed to meet in New York, New York.

z.    On or about September 18, 2011, LUIS SANTANA and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation while LIRANZO was in the Bronx, New York.  During the conversation, in substance and part, they discussed various prescription drugs, and LIRANZO said he would pay SANTANA the following day.

aa.    On or about July 14, 2011, LUIS SANTANA and PAULINO CAYETANO, a/k/a "Cayetano," the defendants, engaged in a telephone conversation while SANTANA was in the Bronx, New York. During the call, in substance and part, SANTANA instructed CAYETANO on how to clean second-hand prescription drug bottles so they did not become ruined. CAYETANO said he had various prescription drugs, and they discussed their street prices. CAYETANO said he would have a small suitcase when they met, and SANTANA said he would call CAYETANO when he arrived.

bb.    On or about March 14, 2012, in the Bronx, New York, PAULINO CAYETANO, the defendant, possessed approximately 2,000 bottles of prescription drugs, including various HIV medications, with a Medicaid reimbursement value of approximately $611,000.

cc.    On or about July 12, 2011, BAYOHAN DIAZ, a/k/a "Bayo," and LUIS SANTANA, the defendants, engaged in a telephone

conversation.  During the conversation, in substance and part,
DIAZ asked SANTANA if he wanted to buy two full bottles and
three empty bottles of an HIV medication.  SANTANA said he had
arrived at the house and would look at them.

      dd.  On or about July 30, 2011, ARMANDO GARCIA, the
defendant, and CC-2 engaged in a telephone conversation.  During
the conversation, in substance and part, GARCIA and CC-2
discussed GARCIA's purchase of prescription medication, the
price, and the dosage of the medication.

      ee.  In or about August 2011, VANESSA ROSARIO, the
defendant, traveled from Florida to New Jersey and delivered a
box containing 36 bottles of Kaletra and 108 bottles of Zyprexa,
which are HIV medications, with a Medicaid reimbursement value
of approximately $107,000, to a commercial interstate carrier
for shipment from New Jersey to Texas.

      ff.  On or about August 31, 2011, SERGIO NOVO, the
defendant, sent a text message to JOSELITO PERALTA, the
defendant, which told PERALTA, in substance and part, to send
"Lazaro" a number of bottles of various HIV medications and that
"Lazaro" would pay PERALTA.

      gg.  On or about August 31, 2011, LAZARO OSPINA and
JOSELITO PERALTA, the defendants, engaged in a telephone
conversation.  During the conversation, in substance and part,

PERALTA told OSPINA that he would give OSPINA something later, and OSPINA said he would be there.

　　　hh.  On or about February 2, 2012, in New Jersey, JOSELITO PERALTA, the defendant, possessed bottles and loose pills of various prescription drugs, with an approximate Medicaid reimbursement value of more than $612,000.

　　　ii.  In or about 2011, CC-1 spoke by telephone with a co-conspirator not named as a defendant herein ("CC-5") to coordinate the purchase of prescription drugs for the CC-1 Organization from CC-5, which CC-5 had obtained from the PERALTA Organization.

　　　jj.  From at least in or about 2011 through in or about 2012, CC-1 and the CC-1 Organization sold second-hand prescription drugs to a New York-based national healthcare company that provided specialty pharmacy and disease management services focused on HIV/AIDS patients ("Pharmacy-1").

　　　kk.  On or about August 18, 2008, a co-conspirator not named as a defendant herein ("CC-6"), who was employed by Pharmacy-1, sent an email to a Corrupt Distribution Company not named as a defendant herein, subject line "Defective Trizivir," an HIV medication, which stated, "Hello, [Pharmacy-1] received a

bottle of Trizivir that has another pharmacy's label on it!!
Someone is NOT CHECKING!!  Please credit on next order.
Thanks."

(Title 18, United States Code, Section 371.)

COUNT THREE

(Conspiracy to Commit Trafficking in Counterfeit Goods)

The Grand Jury further charges:

53.  The allegations contained in paragraphs 1 through 36
and 52(a) through (kk) are hereby repeated, realleged, and
incorporated by reference as if fully set forth herein.

54.  From at least in or about 2011, up to and including in
or about July 2012, in the Southern District of New York, and
elsewhere, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO,
the defendants, and others known and unknown, intentionally and
knowingly did combine, conspire, confederate, and agree together
and with each other to violate Sections 2320(a)(1) and
2320(a)(2) of Title 18, United States Code.

55.  It was a part and an object of the conspiracy that
JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the
defendants, and others known and unknown, intentionally and
knowingly would and did traffic in goods and use counterfeit
marks on and in connection with such goods, in violation of
Title 18, United States Code, Section 2320(a)(1).

56.  It further was a part and an object of the conspiracy that JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, and others known and unknown, willfully and knowingly would and did traffic in labels, stickers, wrappers, emblems, boxes, containers, cans, cases, documentation and packaging, knowing that counterfeit marks had been applied thereto, the use of which was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Section 2320(a)(2).

## Overt Acts

57.  In furtherance of the conspiracy and to effect the illegal objects thereof, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, and others known and unknown, committed the following overt act, among others, in the Southern District of New York and elsewhere:

a.  On or about August 25, 2011, JOSELITO PERALTA and VANESSA ROSARIO, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, ROSARIO and PERALTA discussed counterfeit prescription drug labels that ROSARIO had obtained and sent to PERALTA.  PERALTA complained that the paper was too dark and that it peels.

46

ROSARIO told PERALTA to give them back to her and she would send them back to her supplier if PERALTA told her what needed to be changed.

(Title 18, United States Code, Section 2320(a).)

## COUNT FOUR

### (Narcotics Conspiracy)

The Grand Jury further charges:

58.  The allegations contained in paragraphs 1 through 36 and 52(a) through (kk) above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

### THE DEFENDANTS

59.  As alleged below, several of the defendants involved in the scheme charged in Counts One and Two also conspired with each other and the following individuals to distribute and possess with the intent to distribute prescription drugs that are controlled substances:

a.  At various times relevant to the charges in this Indictment, JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo," the defendant, sold controlled substances to the PADILLA Organization for distribution.

b.  At various times relevant to the charges in this Indictment, BRENDA SANTOS, the defendant, purchased controlled substances from the PADILLA Organization for distribution.

47

c.   At various times relevant to the charges in this Indictment, IRA KARP, the defendant, purchased controlled substances from the PADILLA Organization, which KARP intended to sell to others.  At all times relevant to the charges in this Indictment, KARP, a retired pharmacist, was not licensed to distribute prescription drugs or controlled substances.

STATUTORY ALLEGATIONS

60.  In or about 2011, in the Southern District of New York and elsewhere, JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo," VANESSA ROSARIO, BRENDA SANTOS, and IRA KARP, the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

61.  It was a part and an object of the conspiracy that JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo," VANESSA ROSARIO,

48

BRENDA SANTOS, and IRA KARP, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

62.    The controlled substance involved in the offense was mixtures and substances containing a detectable amount of oxycodone, in violation of 21 U.S.C. § 841(b)(1)(C).

Overt Acts

63.    In furtherance of the conspiracy and to effect the illegal object thereof, JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo," VANESSA ROSARIO, BRENDA SANTOS, and IRA KARP, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about December 7, 2011, JUAN MANUEL TAVAREZ PADILLA and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, they discussed the price of Percocet, which contains oxycodone.

49

b.    On or about November 28, 2011, JUAN TAVAREZ and
HANSER OLIVO LIRANZO, the defendants, engaged in a telephone
conversation while TAVAREZ was in the Bronx, New York.  During
the conversation, in substance and part, LIRANZO told TAVAREZ
that someone had 6,000 tablets of Percocet, which contains
oxycodone, to sell at $4.50 per tablet.  TAVAREZ told LIRANZO to
wait until after TAVAREZ called someone else.

c.    On or about September 16, 2011, AURA CATALINA
TAVAREZ and HANSER OLIVO LIRANZO, the defendants, engaged in a
telephone conversation while TAVAREZ and LIRANZO were in the
Bronx, New York.  During the conversation, in substance and
part, LIRANZO and TAVAREZ discussed oxycodone and prices.

d.    On or about August 20, 2011, JOSELITO PERALTA and
AMAURIS A. ROSARIO, the defendants, engaged in a telephone
conversation while ROSARIO was in New York, New York.  During
the conversation, in substance and part, PERALTA and ROSARIO
discussed oxycodone tablets that ROSARIO had and the price
another person would pay for them.

e.    On or about December 4, 2011, JOEL GABRIEL CASADO
and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone
conversation.  During the conversation, in substance and part,
LIRANZO and CASADO discussed the price of oxycodone tablets that
CASADO would purchase from someone else to sell to LIRANZO.

50

f.    On or about September 22, 2011, VANESSA ROSARIO
and JOSELITO PERALTA, the defendants, engaged in a telephone
conversation.  During the conversation, in substance and part,
PERALTA and ROSARIO discussed various types of oxycodone
tablets.

g.    On or about December 4, 2011, BRENDA SANTOS and
HANSER OLIVO LIRANZO, the defendants, engaged in a telephone
conversation.  During the conversation, in substance and part,
LIRANZO asked whether SANTOS needed Percocet tablets, which
contain oxycodone, and said that he had more than 2,000 of them.
SANTOS replied that she would check and call LIRANZO back.

h.    In or about December 2011, IRA KARP, the
defendant, purchased approximately 1,000 oxycodone tablets from
JUAN MANUEL TAVAREZ PADILLA, the defendant, at KARP's residence
in New York, New York, which KARP intended to sell to another
individual.

(Title 21, United States Code, Section 846.)

COUNT FIVE

(Narcotics Conspiracy)

The Grand Jury further charges:

64.  The allegations contained in paragraphs 1 through 36
and 52(a) through (kk) above are hereby repeated, realleged, and
incorporated by reference as if fully set forth herein.

51

THE DEFENDANTS

65.  As alleged below, several of the defendants involved in the scheme charged in Counts One and Two also conspired with each other and the following individuals to distribute and possess with the intent to distribute prescription drugs that are controlled substances:

a.    At various times relevant to the charges in this Indictment, JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano," ARELIS LEE, and MILAGROS ACEVEDO, the defendants, sold controlled substances to the SANTANA Organization for distribution.

b.    At various times relevant to the charges in this Indictment, LUIS ABREU, the defendant, purchased large amounts of controlled substances from the SANTANA Organization, which ABREU intended to distribute in and around Massachusetts.

STATUTORY ALLEGATIONS

66.  In or about 2011, in the Southern District of New York and elsewhere, LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS ABREU, the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

52

67. It was a part and an object of the conspiracy that LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS ABREU, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

68. The controlled substances involved in the offense were (1) mixtures and substances containing a detectable amount of oxycodone; and (2) mixtures and substances containing a detectable amount of oxymorphone, in violation of 21 U.S.C. § 841(b)(1)(C).

## Overt Acts

69. In furtherance of the conspiracy and to effect the illegal object thereof, LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS ABREU the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about July 8, 2011, LUIS SANTANA and LUIS ABREU, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, SANTANA and

ABREU discussed the purchase and sale of various types of oxycodone tablets with different imprints on them.

b.    On or about August 1, 2011, LUIS ABREU, the defendant, traveled from Massachusetts to the Bronx, New York, to pick up controlled substances.

c.    On or about July 22, 2011, BAYOHAN DIAZ and PAULINO CAYETANO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, DIAZ asked whether CAYETANO could obtain oxymorphone tablets to sell to DIAZ, and they discussed the price.

d.    On or about July 8, 2011, JOSE FELIPE and LUIS SANTANA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, SANTANA asked whether FELIPE had oxycodone for him and discussed controlled prescription drugs that FELIPE had provided to SANTANA previously.

e.    On or about July 19, 2011, BENITO DURAN and BAYOHAN DIAZ, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, DIAZ told DURAN that he wanted blue oxycodone tablets with "M 30" imprinted on them.

f.    On or about July 28, 2011, ARELIS LEE and BAYOHAN DIAZ, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, LEE asked DIAZ

whether LEE should make a deal for 40 mg tablets of oxymorphone. DIAZ instructed LEE to make sure they were 40 mg tablets.

      g.   On or about August 11, 2011, MILAGROS ACEVEDO and BAYOHAN DIAZ, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, DIAZ agreed to purchase oxycodone tablets from ACEVEDO if she delivered them to him.

(Title 21, United States Code, Section 846.)

## FORFEITURE ALLEGATIONS

      70.  As a result of committing the conspiracy to commit mail fraud, wire fraud, and health care fraud offense alleged in Count One of this Indictment, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ,

WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

71. As a result of committing the conspiracy to commit mail fraud, wire fraud, and health care fraud offense alleged in Count One of this Indictment, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R.

56

CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO CAYETANO, a/k/a "Cayetano," ARMANDO GARCIA, SERGIO NOVO, and LAZARO OSPINA, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any property constituting, or derived from, proceeds traceable to such offense.

72.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any property constituting, or derived from, proceeds traceable to such offense.

73.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 2323 (a)(1)(C) and (b), any property constituting, or derived from, proceeds obtained

directly or indirectly as a result of the commission of such offense.

74.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 2323 (a)(1)(B) and (b), any property used, or intended to be used, in any manner or part to commit or facilitate the commission of such offense.

75.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 2323 (a)(1)(A) and (b), any article the making or trafficking of which is prohibited under 18 U.S.C. § 2320.

76.  As a result of committing the conspiracy to violate the narcotics laws of the United States offenses alleged in Counts Four and Five of this Indictment, JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo," VANESSA ROSARIO, BRENDA SANTOS, IRA

KARP, LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO
CAYETANO, a/k/a "Cayetano," JOSE FELIPE, a/k/a "Gino," BENITO
DURAN, a/k/a "Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS
ABREU, the defendants, shall forfeit to the United States,
pursuant to 21 U.S.C. § 852(a)(1), any property constituting, or
derived from, proceeds obtained directly or indirectly as a
result of such offenses.

     77.  As a result of committing the conspiracy to
violate the narcotics laws of the United States offenses alleged
in Counts Four and Five of this Indictment, JUAN MANUEL TAVAREZ
PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a
"Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa,"
JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A.
ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a
"Joel Casado Castillo," VANESSA ROSARIO, BRENDA SANTOS, IRA
KARP, LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," PAULINO
CAYETANO, a/k/a "Cayetano," JOSE FELIPE, a/k/a "Gino," BENITO
DURAN, a/k/a "Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS
ABREU, the defendants, shall forfeit to the United States,
pursuant to 21 U.S.C. § 852(a)(2), any property used, or
intended to be used, in any manner or part to commit or
facilitate the commission of such offenses.

## Substitute Assets Provision

78.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other described forfeitable property.

    (Title 18, United States Code, Sections 981, 982, and 2323
        Title 21, United States Code, Section 853, and
        Title 28, United States Code, Section 2461.)

FOREPERSON

PREET BHARARA
UNITED STATES ATTORNEY

LUIS ABREU,
JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo,"
JOSE FELIPE, a/k/a "Gino,"
BENITO DURAN, a/k/a "Beano,"
ARELIS LEE, and
MILAGROS ACEVEDO,

Defendants.

---

## SUPERSEDING INDICTMENT

S1 Cr. 1072 (DLC)

(18 U.S.C. §§ 371, 1349, 2320, 981, 982, and 2323; 21 U.S.C. §§ 846, 853; 28 U.S.C. § 2461.)

PREET BHARARA
United States Attorney.

A TRUE BILL

_____ Foreperson.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon,"
JOSE MANUEL DOMINGUEZ, a/k/a "Flaco,"
JULIO DOMINGUEZ,
CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto
Padron Pena,"
JUAN MANUEL TAVAREZ PADILLA,
JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene,"
AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa,"
EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio,"
ROBERTO TACHER, a/k/a "Robertico,"
VANESSA ROSARIO,
ELIGIO ARMAS,
EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino,"
JOSELITO PERALTA, a/k/a "Piki,"
JUAN CARLOS PERALTA,
HANSER OLIVO LIRANZO,
KELVIN MANUEL MARTINEZ TAVERAS,
GLENN LUIS CABRERA, a/k/a "Luigi,"
FARY R. CABA PADILLA,
MIGUEL PADILLA,
AMERICO LUIS GARCIA DOMINGUEZ,
WILFRED RODRIGUEZ, a/k/a "Wilson,"
JOSE RAMON GONZALEZ, a/k/a "Chamon,"
ALEX JUSTO,
YOEL FERNANDEZ RIVERO, a/k/a "Mango,"
AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro,"
JACQUELINE JIMENEZ, a/k/a "Morena,"
LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo,"
PAULINO CAYETANO, a/k/a "Cayetano,"
ARMANDO GARCIA,
SERGIO NOVO,
LAZARO OSPINA,
BRENDA SANTOS,
IRA KARP,